## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ESTHER KOONTZ,** )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>**RANDALL D. WATSON,** )<br>**Kansas Commissioner of Education,** )<br>in his official capacity, )<br> )<br>Defendant. )<br> ) | Case No. 17-cv-4099 |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

1.      The State of Kansas has enacted a new law, HB 2409, that requires state contractors to certify that they are not engaged in boycotts of Israel. An official with the Kansas State Department of Education ("KSDE") told Plaintiff Esther Koontz that she would have to certify that she is not currently engaged in a boycott of Israel in order to receive a contract to work as a trainer in the statewide teacher training program. In adherence to calls for boycott made by her church and her congregation, Ms. Koontz refuses to purchase consumer goods and services offered by Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories. When Ms. Koontz responded that she could not sign the certification in good conscience, the state refused to contract with her. The Act violates the First Amendment by requiring Ms. Koontz and other state contractors to certify their non-participation in protected political expression and association. Because the Act engages in speaker-based discrimination and burdens fundamental First Amendment rights, it also violates the Equal Protection Clause.

## JURISDICTION AND VENUE

2. Plaintiff bring this action pursuant to 42 U.S.C. §1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

3. The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

6. Plaintiff Esther Koontz is a resident of North Newton, Kansas. She is a curriculum coach for a public school in Wichita, Kansas.

7. Defendant Randall D. Watson is the Kansas Commissioner of Education and, in that position, is the Chief Administrative Officer for the Kansas State Department of Education ("KSDE"). Mr. Watson is sued in his official capacity.

## STATEMENT OF FACTS

### The Act

8. In June 2017, the Kansas Legislature enacted H.B. 2409, codified at K.S.A. 75-3740e, 75-3740f. The Act provides:

**K.S.A. 75-3740e. Boycott of Israel; definitions**

As used in K.S.A. 75-3740e and 75-3740f, and amendments thereto:

    (a)    "Boycott" means engaging in a refusal to deal, terminating business activities or performing other actions that are intended to limit commercial relations with persons or entities doing business in Israel or in territories controlled by Israel, if those actions are taken either:

        (1)    In compliance with or adherence to calls for a boycott of Israel other than those boycotts to which 50 U.S.C. § 4607(c) applies; or

        (2)    In a manner that discriminates on the basis of nationality, national origin or religion, and that is not based on a valid business reason;

    (b)    "company" means a sole proprietorship, organization, association, corporation, partnership, venture or other entity, its subsidiary or affiliate, that exists for profitmaking purposes or to otherwise secure economic advantage; and

    (c)    "state" means this state or an agency, board, commission or department of this state.

**KS.A. 75-3740f Certification requirement; state precluded from adopting procurement investment or other policy that induces or requires person to boycott Israel or person doing business in Israel; waiver of section**

    (a)    Except as provided subsection (c), the state shall not enter into a contract with an individual or company to acquire or dispose of services, supplies, information technology or construction, unless such individual or company submits a written certification that such individual or company is not currently engaged in a boycott of Israel.

    (b)    The state may not adopt a procurement, investment, or other policy that has the effect of inducing or requiring a person to boycott the government of Israel or its instrumentalities, or to boycott a person doing business in Israel or territories under its jurisdiction, when such boycott is on the basis of such person's location in such places.

    (c)    The secretary of administration will approve contracts, or may waive application of this section on any contract with any state agency if the secretary determines that compliance is not practicable.

9.    The Act became effective on July 1, 2017.

10.    The Act's legislative history indicates that one of its principal objectives is to suppress participation in boycott campaigns aimed at Israel, particularly Boycott, Divestment, and Sanctions ("BDS") campaigns, which seek to apply economic pressure on Israel to protest the Israeli government's treatment of Palestinians in the occupied Palestinian territories and Israel.

11.    The Act's fiscal note indicated that it "would have no fiscal impact on the Office of Procurement and Contracts operations."

12.    In the House Budget Committee hearing, Representative Powell "explained his support for the legislation" by "emphasiz[ing] the unique relationship between the United States and Israel, and Israel's standing as one of the few democracies in the Middle East."

13. Proponent Margie Robinow testified that, "[w]ithout a stance against BDS, the hearts and minds are lost for the next generation, along with the economic impact."

14. Proponent Jacob Pellegrino testified that "[o]ur campuses are no place for a BDS movement and neither is our state."

15. Proponent Dr. Denice Ross Haynes testified that "the boycott movement . . . keeps alive adversarial ideologies, entitlements and offences."

16. The Director of Marketing and Research at the Kansas Department of Commerce also testified in support of the Act, "highlighting the economic impact of Israel as a trading partner with Kansas and the United States, as well as examples of Israeli companies that are based in Kansas."

17. In the Senate Committee on Federal and State Affairs hearing on the Act, Representative Sutton testified in support of the Act. Representative Sutton highlighted Israel's status as an ally of the United States and a trading partner with Kansas, and described BDS as "an act of economic warfare against America's closest ally in the Middle East."

### Ms. Koontz's Decision to Join Her Church's Boycott of Israel

18. Ms. Koontz is a member of the Mennonite Church USA. Her husband has been a Mennonite pastor from 2006 to 2011, and from 2013 to the present. They have three children and have been members of the First Mennonite Church, Hutchinson, for four years.

19. In the fall of 2016, a member of Ms. Koontz's congregation made a series of presentations about his recent tour of Israel and the occupied Palestinian territories. Over the course of eight sessions, Ms. Koontz and members of her congregation watched video presentations from non-governmental organizations, children's rights advocates, former soldiers of the Israel Defense Forces, and others about Israel's treatment of Palestinians.

20. At the conclusion of the series, the presenter asked the gathered congregation members to consider boycott, divestment, and sanctions activity. Ms. Koontz left the meeting with the conviction that she needed to do her part to support the Palestinians' struggle for

equality. She came to the conclusion that her economic decisions should reflect her values, even if that simply meant refusing to buy certain consumer products.

21. On July 6, 2017, the Mennonite Church USA passed a resolution entitled *Seeking Peace in Israel and Palestine.* The resolution calls on Mennonites "to take active and specific steps to redress" the "injustice and violence that both [Palestinians and Jews] have experienced." In particular, the resolution "urge[s] individuals and congregations to avoid the purchase of products associated with acts of violence or policies of military occupation, including items produced in the settlements." In conjunction with this call for boycott, the resolution asks Mennonites "to advocate with the U.S. government to end military aid and arms sales in the region, and to support measures that pressure Israel to freeze settlement construction, respect the civil rights of Palestinian citizens of Israel and the rights of refugees, end the occupation, and work for a just peace in accordance with international law."

22. In adherence to these calls for boycott made by her church and her congregation, Ms. Koontz is engaged in a boycott of consumer goods and services offered by Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories. Ms. Koontz does not limit her boycott to products produced by companies operating in the settlements because she believes that the Israeli economy as a whole profits from the occupation and because she also wants to protest the Israeli government's treatment of Palestinian citizens living in Israel.

23. Ms. Koontz's participation in this boycott is based on her political views and her religious and moral beliefs, including her support for Palestinians' human rights. Through her boycott participation, Ms. Koontz seeks to protest the Israeli government's actions, as well as the U.S. government's support for those actions.

**Ms. Koontz's Participation in KSDE's Mathematics and Science Partnerships Program**

24. Ms. Koontz is a curriculum coach at Horace Mann Dual Language Magnet School, a public school in Wichita. In this role, she supports the school's curriculum and trains

teachers on how to implement it. Before becoming a curriculum coach, Ms. Koontz was a full-time math teacher in Wichita public schools for nine years.

25. In the 2016-17 academic year, Ms. Koontz was selected to participate as a teacher trainer in KSDE's Math and Science Partnerships program. The program aims to "employ research-based professional development activities to enable teachers to develop a deep knowledge of mathematics and high-leverage teaching practices shown to be effective with all students and in particular struggling students." Among other things, the program employs "a cadre of teacher trainers that can consult with teachers in other districts around the state" to "help teachers integrate the math content and pedagogy into existing curricula and classroom practices to develop student-centered, 21st century rich learning environments."

26. On information and belief, KSDE runs the Math & Science Partnerships program through their Program Consultant, Melissa Fast. The program contracts with professional educators, like Ms. Koontz, to provide coaching and training to public school math teachers throughout the state.

27. Although Ms. Koontz has conducted a number of trainings for math teachers in her school district, she was eager to share her expertise with other school districts throughout Kansas.

28. To participate as a teacher trainer in the Math & Science Partnerships program, applicants must complete a two-day course. Once participants complete the course, they are qualified to receive teacher training assignments through the program.

29. Ms. Koontz successfully completed the course on May 30 and 31, 2017, thus qualifying her to serve as a teacher trainer in the program. KSDE reimbursed Ms. Koontz's travel expenses for attending the training.

30. Upon completing the course, Ms. Koontz signed up to participate in the teacher training program. Ms. Fast began to send Ms. Koontz "training requests" via email. Participants could sign up for any of these trainings, and Ms. Koontz indicated that she was available for

several of them. Ms. Koontz told Ms. Fast that she would perform up to three trainings. The requests offered payment of $600/day plus reimbursement for travel.

31. On July 10, 2017, Ms. Koontz received an email from Ms. Fast stating that KSDE's legal department required that Ms. Koontz fill out "another form" in order "to receive payments from KSDE." Ms. Fast explained that the form required state contractors to "certify to KSDE that they are not currently engaged in a boycott of Israel."

32. The form attached to Ms. Fast's email was entitled "Certification Individual or Company Not Currently Engaged in a Boycott of Israel." The Certification stated, "In accordance with HB 2409, 2017 Legislative Session, the State of Kansas shall not enter into a contract with any Individual or Company . . . unless such Individual or Company submits a written certification that such Individual or Company is not currently engaged in a boycott of Israel." The form did not define what constitutes a "boycott of Israel."

33. To complete the Certification, Ms. Koontz would have had to sign below the statement "As an Individual or Contractor entering into a contract with the State of Kansas, it is hereby certified that the Individual or Company listed below is not currently engaged in a boycott of Israel."

34. On August 9, 2017, Ms. Koontz sent an email notifying Ms. Fast of her refusal to sign the Certification. Ms. Koontz wrote, "As a matter of conscience I am not able to sign this Boycott of Israel waiver. Will I still be able to train for KSDE this year and get paid?" Ms. Fast responded, "Unfortunately, the state will not allow me to pay you if it is not signed. I am sorry."

35. Ms. Koontz is unable to sign the Certification in good conscience because she is currently engaged in a politically motivated boycott of consumer goods and services offered by Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories.

36. Ms. Koontz is otherwise eligible to participate in KSDE's teacher training program. She continues to be interested in receiving teacher training assignments.

37. On information and belief, KSDE refuses to contract with Ms. Koontz because she is unwilling to sign the Certification affirming that she is not currently engaged in a boycott of Israel. Ms. Koontz would receive teacher training assignments were it not for the certification requirement.

38. Ms. Koontz's decision to engage in a politically motivated consumer boycott of Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories has no bearing on her skills or qualifications for serving as a teacher trainer in KSDE's teacher training program, nor does it relate to the substance of that work.

39. Defendant's unlawful actions are intentional.

40. Defendant's unlawful actions are taken either with malice or with reckless indifference to Ms. Koontz's clearly established constitutional rights.

## CAUSES OF ACTION

### VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS
### 42 U.S.C. § 1983

41. Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

42. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

43. Ms. Koontz's politically motivated boycott of consumer goods and services offered by Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories is speech and expressive activity related to a matter of public concern. It is therefore protected by the First Amendment.

44. Ms. Koontz's participation in this boycott, together with members of her congregation and the Mennonite Church USA, is protected association under the First Amendment.

45. Ms. Koontz's speech related to her participation in this boycott is speech related to a matter of public concern. It is therefore protected by the First Amendment.

46. **Ideological Litmus Test and Compelled Speech:** HB 2409 violates the First Amendment, both on its face and as applied, because it imposes an ideological litmus test and compels speech related to state contractors' protected political beliefs and associations.

47. **Discrimination Based on Political Beliefs Associations:** HB 2409 violates the First Amendment, both on its face and as applied, because it bars state contractors from receiving any government contracts based on their protected political beliefs and associations.

48. **Restriction on Political Expression:** HB 2409 violates the First Amendment, both on its face and as applied, because it unduly restricts state contractors' ability to engage in core political expression and expressive activity, including participation in political boycotts.

49. **Content and Viewpoint Discrimination:** HB 2409 violates the First Amendment, both on its face and as applied, because it discriminates against protected expression based on the expression's content and viewpoint. The Act prohibits state contractors from boycotting Israel, Israeli companies, or international companies operating in Israeli settlements in the occupied Palestinian territories, while allowing contractors to participate in other boycotts, including boycotts of other foreign countries and "reverse boycotts" targeting companies engaged in boycotts of Israel.

50. **Overinclusiveness/Substantial Overbreadth:** HB 2409 violates the First Amendment because it is overinclusive and substantially overbroad.

## VIOLATION OF EQUAL PROTECTION CLAUSE RIGHTS
## 42 U.S.C. § 1983

51. Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

52. HB 2409 violates the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied, because it engages in speaker-based discrimination and penalizes state contractors based on their exercise of fundamental First Amendment rights.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

A.      Declare that Section 2(a) of the Act violates the First and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiff;

B.      Preliminarily and permanently enjoin Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from requiring KSDE contractors to certify that they are not currently engaged in boycotts of Israel and from penalizing state contractors based on their participation in political boycotts of Israel;

C.      Alternatively, preliminarily and permanently enjoin Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from requiring Plaintiff to certify that she is not currently engaged in a boycott of Israel and from penalizing her based on her participation in a political boycott of Israel;

D.      Award Plaintiff her costs and reasonable attorneys' fees in this action;

E.      Grant Plaintiff such other relief as this Court may deem just and proper.

## PLACE FOR TRIAL

Pursuant to D. Kan. Local Rule 40.2, Plaintiff designates Topeka as the place for trial.

Respectfully submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, KS 66202
Telephone: (913) 490-4102
dbonney@aclukansas.org

Brian Hauss*
Vera Eidelman*
Ben Wizner*
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org

*Applications for *pro hac vice* forthcoming