IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ESTHER KOONTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 17-CV-4099 |
| | ) |
| RANDALL WATSON, | ) |
| Kansas Commissioner of Education, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff has requested a preliminary injunction – an extraordinary remedy reserved for exceptional cases in limited circumstances. This is not such a case. Indeed, the circumstances in which plaintiff has made her request weigh heavily against the issuance of an injunction, beginning with the fact that plaintiff is not seeking to enjoin a law from taking effect, but instead wants the Court to halt the operation of a law that already is in effect, and has been for over four months.

To obtain a preliminary injunction, plaintiff must make a clear showing of irreparable harm. Plaintiff claims that she is being "financially penalized" by K.S.A. § 75-3740f ("the Act") because the State of Kansas has not entered into contracts with her. However, monetary damages are not irreparable harm.

In addition, there is ample evidence in the public record that it is against the public interest to prevent the continued operation of the Act. Kansas and Israel are significant trade partners, and multiple Israeli companies have opened manufacturing facilities in Kansas.

Another requirement for the issuance of a preliminary injunction is that plaintiff must

1

clearly show a substantial likelihood of success on the merits. However, plaintiff's Complaint is premature. There is no evidence that plaintiff applied to the Secretary of Administration for a waiver of the application of the Act pursuant to K.S.A. § 75-3740f(c). If plaintiff had requested a waiver, the Secretary would have granted it. Therefore, plaintiff's claims in this action are not ripe, and plaintiff cannot show a substantial likelihood of success on her underlying claims. For these reasons, the Court must deny plaintiff's motion for a preliminary injunction.

**I.      Plaintiff's Claims.**

Plaintiff claims that she is currently engaged in a boycott of consumer goods and services offered by Israeli companies and international companies operating in territories controlled by Israel. (Doc. No. 4-1, ¶ 10) The Act prohibits the State from entering into a contract with anyone unless the contractor certifies that she is not currently engaged in a boycott of Israel. Plaintiff alleges she was selected to become a "teacher trainer" to train teachers how to implement a school's curriculum through the Kansas Department of Education's Math and Science Partnerships program. (Doc. No. 4-1, ¶¶ 12-13) Plaintiff alleges that she received several training requests from a representative of the Department of Education, and plaintiff responded that she would do up to three trainings. The requests offered payment of $600/day plus reimbursement for travel. (Doc. No. 4-1, ¶ 18) Pursuant to the Act, plaintiff was required to sign a certification that she is not currently engaged in a boycott of Israel in order to contract with, and get paid by, the State of Kansas. Plaintiff refused to sign the certification. (Doc. No. 4-1, ¶¶ 19-23)

**II.     The Standards For Injunctive Relief.**

Because a "preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. University of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (italics in original).

A party requesting a preliminary injunction must establish:

> (1) [she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury … outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). A preliminary injunction should not be granted unless plaintiff has met her burden to establish each of these four factors. *Id.*

Because plaintiff is attempting to alter the status quo, the requested injunction is especially disfavored. *Schrier*, 427 F.3d at 1258-59. A request for injunctive relief that alters the status quo "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (*en banc*), *cert. granted sub nom on other grounds, Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 544 U.S. 973 (2005).

The status quo is the last uncontested status between the parties which preceded the controversy. *Schrier*, 427 F.3d at 1260. Here, the status quo – the last uncontested status – is that the challenged statute is in effect and operative. The injunction plaintiff requests would dramatically alter that situation. Plaintiff tacitly acknowledges this reality when she states that she is seeking this injunction "to prevent the *further* of [sic] enforcement" of the Act. Plaintiff's Motion For Preliminary Injunction at 1 (Doc. No. 3).

Additionally, because statutes are presumptively constitutional, the normal course is for a challenged statute to remain in effect pending a final decision on the merits by the court. *Cf. Marshall v. Barlow's, Inc.*, 429 U.S. 1347, 1348 (1977); *New Motor Vehicle Board of California v. Fox*, 434 U.S. 1345, 1352 (1977). Only in the face of compelling equities with a demonstrable urgency can a person challenging an operative statute obtain a preliminary injunction. "[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Gonzales v. Carhart*, 550 U.S. 124, 153 (2007) (internal citations omitted).

In this case, for all of the reasons set forth below, plaintiff fails to meet the requirements for the extraordinary relief she seeks.

### III. Plaintiff Has Not Made a Clear Showing of Irreparable Harm.

Plaintiff must demonstrate, clearly and unequivocally, that she will suffer irreparable harm unless the Court grants the injunctive relief requested. The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1258 (10th Cir. 2004). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.*

An injury must be certain, great, actual "and not theoretical." *Heideman*, 348 F.3d at 1189. Irreparable harm is not harm that is "merely serious or substantial." *Id.* "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (emphasis in original).

Economic loss does not constitute irreparable harm. *Port City Properties v. Union Pacific Railroad Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008); *Heideman*, 348 F.3d at 1189. This Court has cited Tenth Circuit precedent in holding that a plaintiff must clearly show that there is "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Digital Ally, Inc. v. Corum*, No. 17-CV-02026-DDC-GLR, 2017 WL 1545671, at *3 (D. Kan. Apr. 28, 2017) (citations omitted). "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267. See also *Pulse Sys., Inc. v. SleepMed Inc.*, No. 6:15-1392-JTM, 2016 WL 3088049, at *3 (D. Kan. June 2, 2016) (preliminary injunction denied when movant could be compensated by an award of damages that could be subject to reasonable calculation).

### A. Plaintiff's alleged harm is economic loss that is easily calculable and plaintiff can be compensated after the fact by monetary damages.

In the case at bar, plaintiff claims that she notified the Department of Education that she would do up to three teacher training sessions. The sessions paid $600/day plus reimbursement for travel. As a result of plaintiff's refusal to sign a certification that she is not currently engaged in a boycott of Israel, plaintiff claims Kansas refused to contract with her.

The harm plaintiff is claiming is the very definition of economic loss. Even if plaintiff should prevail on her claims, it is not difficult to calculate that plaintiff could be compensated after the fact in the amount of $1,800. Because plaintiff's alleged harm is easily calculated economic loss, plaintiff cannot show irreparable harm, and a preliminary injunction is not warranted.

Plaintiff also cannot prove that harm is imminent or certain. There is no demonstrable urgency here. The alleged harm has already occurred – plaintiff refused to sign the certification,

and Kansas did not contract with plaintiff.  There is also no evidence that the Department of Education would have hired plaintiff for more than three training sessions.  In fact, plaintiff herself limited the number of sessions she would perform; plaintiff admits that she told the Department that she "would do up to three trainings."  (Doc. No. 4-1, p. ¶ 18)  There is simply no evidence that any economic harm is imminent or certain.

Finally, plaintiff's harm is not "great" as measured by preliminary injunction standards.  While most people consider $1,800 nothing to sneeze at, the amount of harm alleged does not meet the requirement that the harm alleged be beyond "merely serious or substantial" harm.  See, e.g., *Tso v. Murray*, No. 16-CV-2480-WJM-CBS, 2017 WL 3116338, at *2 (D. Colo. July 21, 2017) (allegations that without injunction plaintiff would become insolvent and homeless were allegations of "serious or substantial harm in the form of economic loss" and fell short of irreparable harm).

Plaintiff has offered no evidence, much less a clear and unequivocal showing, that the Court must act now to prevent imminent harm that is "certain, great, actual and not theoretical." *Heideman*, 348 F.3d at 1189.  For these reasons, plaintiff has failed to carry her heightened burden to clearly show an injury that is imminent, great, and cannot be compensated for at a later date.

> **B.     Injunctive relief is not automatic whenever a constitutional violation is alleged.**

Plaintiff attempts to bootstrap her claim of substantial likelihood of success on the merits into a showing of irreparable harm.  Plaintiff claims that because her constitutional rights have been violated, that amounts to *per se* irreparable harm. (Doc. No. 4, p. 23-24)  However, plaintiff must show that the claimed constitutional violation is imminent and therefore irreparable without an injunction.  To hold that a finding of a constitutional violation

6

automatically qualifies as irreparable harm would eliminate the irreparable harm requirement entirely.

The Tenth Circuit has specifically held that an applicant for injunctive relief based on an alleged constitutional injury must still demonstrate that the claimed injury is imminent. In *Pinson v. Pacheco, et al.*, No. 10-1360, 397 Fed. Appx. 488, 2010 WL 3911348 (October 7, 2010), the court stated:

> We have stated that "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." [citation omitted]  However, this statement relates only to the irreparability aspect of the alleged injury, and not to its imminence.  We may assume that a constitutional injury is irreparable in the sense that it cannot be adequately redressed by post-trial relief.  However, that has no bearing on whether the alleged constitutional injury is imminent.  If the possibility of future harm is speculative, the movant has not established that he will suffer "irreparable injury … *if the preliminary injunction is denied* …." *Kikumura*, 242 F.3d at 955 (emphasis added).  Pinson's contention that he need not make a showing of future injury is without merit.

*Pinson*, 397 Fed. Appx. at 491-92.  As stated above, the purpose of a preliminary injunction is not to remedy past harm but to protect against injury "that will surely result." *Schrier*, 427 F.3d at 1267.  Plaintiff has already made the choice of whether she would sign the certification.  Any possible injury to plaintiff has already occurred.  Therefore, plaintiff cannot show that any infringement of a constitutional right is imminent.

### IV.   Because There is No Threatened Injury, Any Threatened Injury Cannot Outweigh the Damage the Proposed Injunction May Cause the State of Kansas.

As set forth above, there is no imminent, threatened injury to plaintiff.  As set forth below, an injunction would be adverse to the public interest and the people of Kansas. Therefore, plaintiff cannot clearly and unequivocally show that any threatened injury outweighs the damage a proposed injunction would cause the State.

## V.     The Injunction, If Issued, Would Be Adverse to the Public Interest.

The public interest weighs against granting a preliminary injunction.  Proponents of the Act emphasized the unique economic relationship between the United States and Israel, as well as Israel's standing as one of the few democracies in the Middle East.  See Supplemental Note on House Bill No. 2409, Session of 2017.[1]  Regarding Kansas specifically, Israel is a strong trade partner with Kansas.  Kansas Department of Commerce Written Testimony, Minutes for HB 2409, House Committee on General Government Budget, March 23, 2017.  "In 2016, Kansas exported $56,681,800 in total commodities [to Israel], while importing $83,650,853 [from Israel]." *Id.*  In addition, multiple companies from Israel have chosen Kansas as their home to open manufacturing facilities.  *Id.*  The Kansas Department of Commerce believes that "companies who have decided to make a financial investment in Kansas" should not be subject to discrimination based on nationality.  *Id.*  In summary, "It is in the best interest of Kansas to continue our strong trade relationship with Israel." *Id.*  The Act was passed in the House by a margin of 99-13, passed the Senate 36-3, and was signed by the Governor on June 16, 2017.

There is ample evidence in the public record that it is against the public interest to prevent the continued operation of the Act.  Plaintiff cannot clearly and unequivocally show that an injunction would not be adverse to the public interest.

## VI.    Because Plaintiff's Claims Are Not Ripe, Plaintiff Has Not Made a Clear Showing of Substantial Likelihood of Success.

While plaintiff focuses almost exclusively on the portion of K.S.A. § 75-3740f that prohibits the State from contracting with those currently engaged in a boycott of Israel, K.S.A. § 75-3740f(c) is very relevant to plaintiff's claims in this action.  K.S.A. § 75-3740f(c) states:

---

[1] The Act's legislative history, including the Supplemental Note, committee minutes, and testimony, can be accessed at http://www.kslegislature.org/li/b2017_18/measures/hb2409/.

"The secretary of administration will approve contracts, or may waive application of this section on any contract with any state agency if the secretary determines that compliance is not practicable."  There is no evidence that plaintiff requested the Secretary of Administration to approve her contract, or to waive application of K.S.A. § 75-3740f.  Therefore, plaintiff's claims in this action are not ripe, and plaintiff cannot show a substantial likelihood of success on her underlying claims.

The ripeness doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807-08 (2003) (citations omitted).  In determining whether an issue is ripe, a court must consider:  1) whether delayed review would cause hardship to the plaintiff; 2) whether judicial intervention would inappropriately interfere with administrative action; and 3) whether a court would benefit from further factual development.  *Qwest Communications Intern., Inc. v. F.C.C.*, 240 F.3d 886, 893-94 (10th Cir. 2001).  Whether an issue is fit for judicial decision requires a court to ask whether the issue involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (citation omitted).

The decision in *Levin v. South Carolina Dept. of Health and Human Services*, No. 12-CV-0007, 2015 WL 1186370 (D.S.C. Mar. 16, 2015), is instructive.  In *Levin*, plaintiff and his mother filed a § 1983 suit after plaintiff's Medicaid coverage for his in-home attendant care was reduced from 56 hours per week to 49.  Prior to filing suit, and pursuant to his doctor's opinion that more attendant care was needed, plaintiff had requested that the state provide him with 60

9

hours per week. To approve any request for services, the state required that the requester sign a medical release form so the state could obtain plaintiff's medical records to justify the request. Plaintiff refused to sign the state-provided medical release. The state argued that the issue was not ripe for adjudication because plaintiff had not submitted the required release forms, preventing the state from having the opportunity to review plaintiff's request and make an agency determination.

The court agreed with the state and found the issue was not ripe. The court held that the state had not made any official determination regarding plaintiff's requested services. In so holding, the court stated:

> [B]ecause the requested services have not been denied by SCDHHS, the possibility still exists that Levin will be deemed eligible for the benefits. If such approval was ultimately given by SCDHHS, Plaintiffs' current claim before this Court would be moot. Therefore, it is obvious to the Court that Plaintiffs' claim of denied services for the 2014 request rests entirely upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." (citations omitted) Any judicial intervention at this stage would impinge upon SCDHHS' authority to determine whether the additional requested services should be provided.

*Levin*, at *9.

Similarly, in this action plaintiff did not request the Secretary of Administration to approve any possible contract or waive the application of the Act. The Secretary did not have an opportunity to review any waiver request by plaintiff and make a determination of whether plaintiff would be eligible for a waiver. If such waiver was ultimately given by the Secretary, this action would be moot. Plaintiff's claim is squarely based on contingent future events that may not occur at all.

In fact, if plaintiff *had* requested the Secretary to waive application of K.S.A. § 75-3740f, the Secretary would have waived application of such section. See Affidavit of Sarah L.

Shipman, attached hereto as "Exhibit 1." If plaintiff had requested a waiver, plaintiff would not have sustained any alleged harm that is the entire basis of this lawsuit. Further, requiring plaintiff to request a waiver would allow the court to have additional factual development to answer the question: would the Secretary waive application of the Act?

Plaintiff must demonstrate, clearly and unequivocally, that she has a substantial likelihood of success on the merits of her claims. Because her claim is not ripe, plaintiff cannot establish that she would succeed on the merits.

**VII.    Conclusion.**

While this action is pending, plaintiff is not prevented from continuing her boycott – she can continue to maintain her beliefs. However, plaintiff cannot make the necessary clear showing to justify a preliminary injunction enjoining a statute that was approved by an overwhelming majority of Kansas legislators. For all of the reasons stated above, plaintiff's motion for a preliminary injunction must be denied.

              Respectfully submitted,

              OFFICE OF THE ATTORNEY GENERAL
              DEREK SCHMIDT

              s/ Shon D. Qualseth
              Shon D. Qualseth, KS No. 18369
              Assistant Attorney General/Senior Trial Counsel
              Bryan A. Ross, KS #21607
              Assistant Attorney General
              Memorial Building, 2nd Floor
              120 SW 10th Avenue,
              Topeka, Kansas, 66612-1597
              Phone: (785) 368-8424
              Fax: (785) 291-6797
              Email: shon.qualseth@ag.ks.gov
              *Attorney for Defendant*

**CERTIFICATE OF SERVICE**

      This is to certify that on this 17th day of November, 2017, the above and foregoing Entry of Appearance was electronically filed with the Clerk of the Court by using the CM/ECF system with electronic notification to:

Stephen Douglas Bonney
ACLU Foundation of Kansas
6701 W 64th Street, Suite 210
Overland Park, Kansas 66202
dboney@aclukansas.org
*Attorney for Plaintiff*

Brian Hauss
Vera Eidelman
Ben Wizner
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Sstreet, 18th Floor
New York, NY 10004
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org
*Attorneys for Plaintiff*

                                        s/ Shon D. Qualseth
                                        Shon D. Qualseth