# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ESTHER KOONTZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case No. 17-CV-4099** |
| | ) | |
| | ) | |
| **RANDALL D. WATSON,** | ) | |
| **Kansas Commissioner of Education;** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Esther Koontz has moved for a preliminary injunction against House Bill 2409, K.S.A. 3740e, 3740f, which requires all state contractors to certify that they are not participating in boycotts of Israel. Plaintiff was informed that she could not contract with the Kansas State Department of Education's ("KSDE") teacher training program without signing the certification. Declaration of Esther Koontz ("Koontz Decl.") ¶ 23. In her preliminary injunction motion, Plaintiff argued that the Act violates her First Amendment and Equal Protection Clause rights, both facially and as applied, by: (1) imposing an ideological litmus test on state contractors, Pl.'s Opening Br. at 13–16; (2) unconstitutionally restricting state contractors' protected expression, including through participation in political boycotts *id*. at 16–20; and (3) engaging in

unconstitutional content, viewpoint, and speaker-based discrimination regarding boycotts of Israel, *id.* at 21–23.[1]

Remarkably, the phrase "First Amendment" appears nowhere in Defendant's response to Plaintiff's motion. Defendant does not even attempt to argue that the Act's certification requirement comports with Supreme Court decisions protecting the right to participate in political boycotts and forbidding the government from conditioning benefits on the forfeiture of First Amendment freedoms. Nor does Defendant offer any justification for the Act's blatant infringement of Plaintiff's and others' constitutional rights. Instead, Defendant offers an array of specious procedural grounds for denying Plaintiff a preliminary injunction in this case. These arguments are easily rebutted. Recognizing the seminal importance of the interests at stake and the irreparable private and public harms occasioned by delay, the Tenth Circuit has not hesitated to enter preliminary injunctions against laws that facially violate the First Amendment. This Court should do so here.

## ARGUMENT

### I.      Defendant Does Not Dispute That HB 2409 Violates the First Amendment.

Defendant opposes Plaintiff's motion for a preliminary injunction on a number of procedural grounds, but offers no substantive response to Plaintiff's arguments that HB 2409 violates the First Amendment, both on its face and as applied to her. Defendant has therefore waived any argument regarding HB 2409's constitutionality. Because "[c]ourts are . . . entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1526 (1st Cir. 1996)), "the nonmovant acts, or fails to act, at its peril." *Adler v. Wal–Mart Stores,*

---

[1] Because Plaintiff's Equal Protection Clause claims are derivative of her First Amendment claims, Plaintiff here refers to them collectively as First Amendment claims.

*Inc.*, 144 F.3d 664, 672 (10th Cir.1998). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court," which should be "wary of becoming [an] advocate[] who . . . make[s] a party's case for it." *Id.*; *see also, e.g.*, *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014); *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992).

Defendant's decision not to oppose Plaintiff's arguments regarding HB 2409's constitutional deficiencies is particularly relevant here, for two reasons. First, when evaluating motions for preliminary injunction "[i]n the First Amendment context, 'the likelihood of success on the merits will often be the determinative factor' because of the seminal importance of the interests at stake." *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (quoting *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013)). Although Defendant contends that Plaintiff is not likely to succeed on her First Amendment claims because they are unripe, Plaintiff easily meets the relaxed ripeness standard governing facial First Amendment challenges. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). Moreover, this contention fails to challenge the substantive merits of Plaintiff's claims. As discussed below, the Tenth Circuit routinely presumes that a plaintiff who has demonstrated a likelihood of success on the merits of her First Amendment claim also satisfies the other three preliminary injunction factors, *see Hobby Lobby*, 723 F.3d at 1145, and Defendant has not rebutted that presumption here.

Second, Defendant has failed to carry his burden of justifying HB 2409's infringement of First Amendment rights. Although courts extend a presumption of constitutionality to all statutes, "this presumption does not apply when the challenged statute infringes upon First Amendment rights." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th

Cir. 2012). Rather, "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entertainment Group*, 529 U.S. 803, 816 (2000) (collecting cases). Defendant argues that HB 2409 serves an asserted public interest in trade relations and enforcement of duly enacted laws, Def.'s Br. at 8, but he nowhere asserts that these interests are sufficiently important to withstand strict or even intermediate scrutiny. Even if Defendant's asserted interests are accepted, he fails to argue that HB 2409's blanket certification requirement is sufficiently tailored to advance these interests without unnecessarily infringing First Amendment rights. In short, Defendant has conceded that HB 2409's infringement of Plaintiff's and other state contractors' First Amendment rights cannot be justified. This concession is ultimately dispositive, as set forth below.

## II.   A Heightened Preliminary Injunction Standard Is Not Warranted, Because a Preliminary Injunction Would Restore the Status Quo.

Although Plaintiff is entitled to preliminary relief under even the most stringent preliminary injunction standard, Pl.'s Opening Br. at 9 n.5, there is no basis for imposing a heightened standard in this case. Defendant's argument in favor of a heightened standard is based on the assumption that Plaintiff seeks to alter the status quo by enjoining a newly enacted law that went into effect less than 15 weeks before this case was filed. This assumption is misplaced. As this Court has noted, the status quo "is not the status 'immediately preceding the litigation,'" but rather "the last peaceable, uncontested status before the dispute developed." *State of Kansas v. United States*, 192 F. Supp. 3d 1184, 1209 (D. Kan. 2016). In this case, the relevant status quo is the period before HB 2409 went into effect on July 1. At that point, Plaintiff had already successfully completed Defendant's two-day training course and was fully eligible to accept teacher training assignments without signing an unconstitutional certification

form. In fact, before the new and unconstitutional statute took effect, Plaintiff was already receiving training requests via email. Koontz Decl. ¶ 18.

"[I]t is sometimes necessary to require a party who has recently disturbed the *status quo* to reverse its actions. Such an injunction restores, rather than disturbs, the *status quo ante*, and is thus not an exception to the rule." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (McConnell, J., concurring), *cert. granted sub nom on other grounds*, *Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 544 U.S. 973 (2005). For instance, "[w]hen a statute is newly enacted, and its enforcement will restrict rights citizens previously had exercised and enjoyed, it is not uncommon for district courts to enjoin enforcement pending a determination of the merits of the constitutional issue." *Id.* at 1018 (collecting cases); *see also Valdez v. Applegate*, 616 F.2d 570, 573 (10th Cir. 1980) (holding that, where government decided upon grazing limitations in October 1978 and plaintiffs did not file suit challenging them until late December 1978, an "order maintaining the status quo" would mean "enjoining the implementation" of the limitations).

Defendant argues that "the status quo – the last uncontested status – is that the challenged statute is in effect and operative." But this *ipse dixit* is nothing more than wishful thinking. *See, e.g.*, *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) ("EchoStar's contention that the status quo was defined immediately before the action is unavailing. Not only is this status contested by Dominion, but it is the impetus for this litigation and the pending arbitration."). This dispute developed because the state enacted a new law that restricts the First Amendment rights enjoyed by Ms. Koontz and every other state contractor prior to July 1. Courts often enter preliminary injunctions against presumptively unconstitutional laws for the express purpose of restoring the status quo. *See, e.g.*, *ACLU of Kan. & W. Mo. v.*

*Praeger*, 815 F. Supp. 2d 1204, 1208 (D. Kan. 2011) ("[T]he court concludes that the last uncontested status between the parties before the dispute arose would be that which existed prior to the challenged statute taking effect."). This case, which was filed only a few months after HB 2409 took effect, is no different.

### III.     Plaintiff's Claims Are Ripe.

The only argument Defendant raises to challenge Plaintiff's likelihood of success on the merits is that her claims are not ripe for adjudication, because she theoretically could have obtained a waiver from the Secretary of Administration. Def.'s Br. at 8–11. Defendant relies heavily on *Levin v. South Carolina Department of Health & Human Services*, an unpublished South Carolina district court decision holding *inter alia* that evidence regarding the plaintiff's request for 60 hours of medical care should be stricken from the record because the issue was not ripe for adjudication. No. 3:12–cv–0007–JFA, 2015 WL 1186370, at *8–10 (D.S.C. Mar. 16, 2015). In particular, the court found that the state health and human services department "has not made any official determination, whether it be acceptance or denial, of these requested services," and held that "[t]he absence of a final agency decision on this issue" rendered the question unripe. *Id.* at *9. Here, by contrast, Defendant himself argues that "[t]he alleged harm has already occurred – plaintiff refused to sign the certification, and Kansas did not contract with plaintiff." Def.'s Br. at 5–6.[2]

Whereas *Levin* involved a challenge to ad hoc agency action that had yet to take place, Plaintiff here raises facial First Amendment challenges to legislation that has been enacted by the State of Kansas. Plaintiff easily satisfies the "relaxed standard" governing such claims, which "focuses on three elements: (1) hardship to the parties by withholding review; (2) the chilling

---

[2] As discussed below, the harm to Plaintiff is actually ongoing because Kansas refuses to contract with her unless and until she signs the certification.

effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review." *New Mexicans for Bill Richardson*, 64 F.3d at 1500; *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). Withholding review on ripeness grounds would prolong the irreparable harm to Plaintiff and other state contractors, who will continue to be subject to an unconstitutional certification requirement and who are likely to be chilled by the Act's continued enforcement. *See New Mexicans for Bill Richardson*, 64 F.3d at 1500. And Plaintiff's facial challenge raises "strictly legal questions that do 'not involve the application of [the law] in a specific factual setting," thus making "[f]urther factual development" wholly "unnecessary to [the Court's] resolution of the preliminary injunction factors." *Awad v. Ziriax*, 670 F.3d 1111, 1124–25 (10th Cir. 2012)

Defendant's contention that Plaintiff should have attempted to exhaust administrative remedies by *sua sponte* asking the Secretary of Administration for a waiver is squarely at odds with controlling Supreme Court and Tenth Circuit authority. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."); *ACORN v. City of Tulsa*, 835 F.2d 735, 739 (10th Cir. 1987) ("In *ACORN v. Golden*, we held that if a plaintiff has standing to bring a facial challenge for injunctive or declaratory relief, '[a]pplying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law.'" (citing *ACORN v. Municipality of Golden*, 744 F.2d 739, 744 (10th Cir. 1984)).[3]

At best, HB 2409's waiver provision is irrelevant to Plaintiff's facial challenge. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 968 (1984) ("The possibility of a waiver

---

[3] Defendant's argument also contradicts common sense, since HB 2409 provides no procedure for contractors to request such a waiver from the Secretary of Administration.

may decrease the number of impermissible applications of the statute, but it does nothing to remedy the statute's fundamental defect."). At worst, it exacerbates the Act's constitutional infirmities. As the Supreme Court has explained, "a law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763 (1988); *see also Sanjour v. EPA*, 56 F.3d 85, 97 (D.C. Cir. 1995) (en banc) ("Far from being the saving grace of this regulatory scheme—as the government suggests—the broad discretion that the regulations vest in the agency [to determine which government employees may accept honoraria for outside speaking engagements] reinforces our belief that they are impermissible.").

Grounds for such concern are readily apparent here. Defendant has submitted a four-paragraph declaration from the Secretary of Administration, stating only that "[i]f plaintiff had presented the information set forth in [the case documents] in a request for a waiver of the application of K.S.A. 75-3740f, [she] would have waived application of such section." Affidavit of Sarah L. Shipman ("Shipman Aff.") ¶ 4. Defendant has not offered any evidence, or even argument, to explain the basis for Secretary Shipman's determination that "compliance [with the certification requirement] is not practicable" in this case, as required under the Act. K.S.A. 75-3740f(c). Courts rightly regard such post hoc litigating positions with extreme skepticism. *See, e.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988).

Even if the Secretary of Administration were to grant Ms. Koontz a waiver for this contract, Plaintiff's facial First Amendment challenge would remain justiciable. *See Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 89–96 (D.C. Cir. 1986) (holding that facial challenge to

government guidelines regarding FOIA fee waivers were both ripe and not moot, even though the government granted the plaintiffs fee waivers on their outstanding FOIA requests after litigation had commenced). The voluntary cessation doctrine "protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc*., 484 U.S. 49, 67 (1987) (quoting *United States v. Oregon State Medical Soc'y*, 343 U.S. 326, 333 (1952)); *see also Farnam v. Walker*, 593 F. Supp. 2d 1000, 1013–14 (C.D. Ill. 2009) (holding that the defendant's voluntary cessation of unlawful conduct did not negate risk of irreparable harm). These concerns are especially salient where it appears that the defendant is attempting to prevent facial or classwide relief by picking off individual plaintiffs, as seems to be the case here. *See, e.g.*, *Reed v. Heckler*, 756 F.2d 779, 786–87 (10th Cir. 1985) (holding that defendants could not moot a class action, and thus evade judicial review, by voluntarily performing actions demanded by the named plaintiff).

## IV. Plaintiff Has Demonstrated Irreparable Harm.

"The Supreme Court has made clear that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (collecting cases) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). For this reason, where the government violates First Amendment rights, "irreparable injury is presumed." *Cmty. Commc'ns Co., Inc. v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981); *cf. Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (holding that irreparable harm must be presumed even where commercial speech rights are infringed). As noted above, Defendants have conspicuously failed to dispute that HB 2409 violates both Plaintiff's First Amendment rights and the First Amendment rights of current and potential state contractors. Given that, "no further showing of irreparable injury is

necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). Defendant's arguments to the contrary don't withstand scrutiny.

### A. HB 2409 Continues to Violate the First Amendment Rights of Plaintiff and Other State Contractors.

Defendant argues that a preliminary injunction is unwarranted because "Plaintiff has already made the choice of whether she would sign the certification. Any possible injury to plaintiff has already occurred." Def.'s Br. at 7. That is false. Plaintiff is still interested in receiving training assignments, but she remains barred from them because she cannot sign the certification in good conscience. Koontz Decl. ¶¶ 22, 25. To be eligible for training assignments, Plaintiff would have to stop participating in her boycott of Israel and sign the certification. In other words, HB 2409 continues to impose an unconstitutional choice on Plaintiff and other state contractors throughout Kansas: either disavow participation in boycotts of Israel or forgo government contracts. Indeed, the Act's *raison d'etre* is to chill the constitutionally protected boycott participation of Plaintiff and people like her. *See, e.g.*, *Hearing Before the H. Commo. On Gen. Gov't Budget*, Kan. 2017 Sess., Statement of Margie Robinow 1 ("Without a stance against BDS, the hearts and minds are lost for the next generation, along with the economic impact."); Statement of Jacob Pellegrino ("Our campuses are no place for a BDS movement and neither is our state.").

The Supreme Court confronted a similar attempt to chill protected expression and association in *Elrod v. Burns*. There, the Court held that a preliminary injunction was warranted to restrain the Cook County Sheriff's practice of firing non-civil-service employees who did not support the Democratic Party. 427 U.S. at 373–74 (plurality opinion). The district court in that case denied preliminary relief, concluding that the employees failed to demonstrate irreparable harm and that they "had an adequate remedy at law." *Id.* at 373. The Supreme Court, however,

held that "[i]nasmuch as this case involves First Amendment rights of association which must be carefully guarded against infringement by public office holders, we judge that injunctive relief is clearly appropriate in these cases." *Id.* (approvingly quoting *Burns v. Elrod*, 509 F.2d 1133, 1136 (7th Cir. 1975)). In particular, the Court held that the plaintiffs had demonstrated irreparable harm because "First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id.* at 373. Here, HB 2409 threatens Plaintiff with continued ineligibility for state contracts if she does not stop her boycott; the threat that Plaintiff's speech will be chilled therefore remains.

Even if Plaintiff's refusal to sign the certification had somehow rendered her permanently ineligible for the teacher training program—and Defendant does not state that it did—the permanent imposition of such a penalty would itself constitute irreparable harm, regardless of whether Plaintiff herself were currently chilled. *Planned Parenthood Association of Utah v. Herbert*, 828 F.3d 1245 (10th Cir. 2016) is directly on point. There, the Planned Parenthood Association of Utah (PPAU) claimed that a state directive ordering the termination of its government contracts in retaliation for its abortion-related expression and association violated its First Amendment rights under the unconstitutional conditions doctrine. *See id.* at 1258–63. Reversing the district court, the Tenth Circuit held that the state directive terminating PPAU's contract imposed irreparable harm justifying a preliminary injunction: "[W]e conclude that PPAU has, in fact, demonstrated a substantial likelihood of success on the merits of its unconstitutional conditions claims. We in turn conclude that the likelihood that PPAU will suffer a violation of its First Amendment rights if the Directive is left in place, standing alone, gives rise to an irreparable injury." *Id.* at 1263 (citing *Elrod*, 427 U.S. at 373); *see also, e.g.*, *Anderson*

*v. Davila*, 125 F.3d 148, 163 n.15 (3d Cir. 1997); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989); *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983).

Moreover, because Plaintiff is seeking facial relief, the significant chill HB 2409 imposes on other state contractors and potential state contractors must be considered as part of the irreparable harm analysis. *Hill v. Williams*, No. 16–cv–02627–CMA, 2016 WL 8667798, at *11 (D. Colo. Nov. 4, 2016). ("[T]he harm to Plaintiffs *and other Colorado voters*—the deprivation of First Amendment free speech rights—is presumptively an irreparable harm." (emphasis added)). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Joseph H. Munson Co.*, 467 U.S. at 958. Thus, for example, the Supreme Court has upheld preliminary injunctions on overbreadth claims in order to protect the First Amendment rights of third parties, even when the challenged statute could constitutionally be applied to the plaintiffs. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933 (1975).

The Act's violation of Plaintiff's and other state contractors' First Amendment rights distinguishes this case from *Schrier v. University of Colorado* and *Pinson v. Pacheco*, on which Defendant relies. In *Schrier*, a professor claimed that the university terminated his appointment as chair of the medicine department in retaliation for his speech on a matter of public concern, exposing him to "irreparable injury [through] the loss of academic prestige, standing, or reputation" and the attendant loss of job opportunities. 427 F.3d 1253, 1256, 1266 (10th Cir. 2005). The Tenth Circuit held that Dr. Schrier was "not entitled to a presumption of irreparable injury" because he had "failed to demonstrate the requisite likelihood of success on his free speech and academic freedom claims." *Id.* at 1266. The court also agreed with the district court

that "because the types of injuries alleged by Dr. Schrier occurred in the past [i.e., the loss of reputation] or were speculative [i.e., the loss of job opportunities], and could be remedied through money damages should he ultimately prevail on his claims, a preliminary injunction was unwarranted." *Id.* at 1266–67. By contrast, Plaintiff is likely to succeed in demonstrating that HB 2409 is violating her and others' First Amendment rights, so she is entitled to a presumption of irreparable harm. Moreover, the injuries imposed by the Act are ongoing and, as discussed below, cannot be remedied through money damages.

The other case Defendant relies upon, *Pinson v. Pacheco*, 397 F. App'x 488 (10th Cir. 2010), is even less helpful. *Pinson* is an unpublished Tenth Circuit opinion, and therefore carries little weight. *See, e.g.*, *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). The opinion itself is also completely inapposite. *Pinson* concerned a *pro se* prisoner's *Bivens* action against federal prison officials for deliberate indifference to his risk of suffering physical violence at the hands of other inmates. 397 F. App'x at 489–90. The Tenth Circuit panel held that the district court did not abuse its discretion in finding the possibility of future harm speculative because "Pinson's allegations did not show that he was in imminent danger at the Talladega prison." *Id.* at 492. The court accordingly concluded that Pinsons had not demonstrated that he would "suffer 'irreparable injury . . . *if the preliminary injunction is denied*." *Id.* (emphasis and omission in original) (quoting *Kikumura*, 242 F.3d at 955). Here, in contrast, Plaintiff has alleged that HB 2409 is currently violating her and others' First Amendment rights. A preliminary injunction is necessary to remedy that ongoing constitutional harm.

**B. Monetary Damages Cannot Remedy Defendant's Ongoing Violation of First Amendment Rights.**

Defendant also argues that Plaintiff is not entitled to a preliminary injunction, because she "could be compensated after the fact in the amount of $1,800." Def.'s Br. at 5. But Plaintiff has not requested any monetary relief, *see* Compl. ¶¶ A–E, and such relief would likely be barred by the state's sovereign immunity under the Eleventh Amendment. *See, e.g.*, *Hale v. Emporia State Univ.*, --- F. Supp. 3d ----, No. 16-4183-DDC-KGG, 2017 WL 3011716, at *9 (D. Kan. July 4, 2017) (collecting cases). The unavailability of monetary damages suffices to establish that Plaintiff will suffer irreparable harm without a preliminary injunction. *Kansas v. United States*, 171 F. Supp. 3d 1145, 1156 (D. Kan. 2016) ("Because of sovereign immunity, monetary damages will not compensate Kansas for the harm it faces. Therefore, the Court finds that Kansas has established that it will sustain irreparable harm without preliminary injunctive relief.").[4]

Moreover, it is black letter law that monetary damages cannot remedy First Amendment harms. *See, e.g.*, *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1263–64 (concluding that "'[d]amages would [likely] be inadequate or difficult to ascertain' for such a constitutional violation" of PPAU's First Amendment rights" (alterations in original) (internal quotation marks

---

[4] Defendant's calculation that Plaintiff would be entitled to $1,800 is based on his supposition that Plaintiff intended to perform three one-day teacher training sessions under the contract, at a rate of $600 per day. Def.'s Br. at 5. Defendant misunderstands the nature of Plaintiff's claim. When Plaintiff emailed Ms. Fast stating that she would perform up to three trainings, she meant that she would perform up to three of the trainings that Ms. Fast had offered at that point in time. Koontz Decl. ¶ 18; Supplemental Declaration of Esther Koontz (Supp. Koontz Decl.) ¶ 2, attached hereto as "Exhibit 1." She did not mean that she would perform only three trainings under the contract, ever. *Id.* To the contrary, Plaintiff would like to perform numerous teacher trainings under contract with the state over a number of years. *Id.*; *see also* Koontz Decl. ¶ 25 ("I continue to be interested in receiving [teacher] training assignments"). As discussed above, the certification continues to pressure Plaintiff to stop her boycott participation. Supp. Koontz Decl. ¶ 3

omitted) (quoting *Awad*, 670 F.3d at 1131)). Indeed, even Defendant's block quote from *Pinson* acknowledges that courts "may assume that a constitutional injury is irreparable in the sense that it cannot be adequately redressed by post-trial relief." Def.'s Br. at 7 (quoting *Pinson*, 397 F. App'x. at 491–92). Nor would post judgment money damages redress the harm to other state contractors and would-be state contractors, who would still be subject to an unconstitutional certification requirement if this Court denied a preliminary injunction.

### V.     The Balance of Harms and the Public Interest Tip Sharply in Favor of a Preliminary Injunction.

Both the balance of harms and the public interest strongly support a preliminary injunction against HB 2409. Defendant does not even attempt to rebut Plaintiff's contention that the Act is imposing an unconstitutional certification requirement on every single state contractor. Instead, Defendant argues that the balance of harms tips in his favor because "there is no imminent, threatened injury to plaintiff." Def.'s Br. at 7. As set forth above, Plaintiff's First Amendment rights continue to be impaired by HB 2409, which renders her ineligible for state contracts unless she gives up her boycott and signs the certification. Although Defendant asserts an interest in enforcing a Kansas statute, *id.* at 8, "the threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause Defendant['s] inability to enforce what appears to be an unconstitutional statute." *ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (citation and internal quotation marks omitted); *see also Awad*, 670 F.3d at 1131 ("[W]hen the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected.").

Defendant also asserts an interest in maintaining Kansas's trade relationship with Israel. But he offers no evidence that the grant of a preliminary injunction in this case would materially

affect trade, and the Act's fiscal note indicates that it has "no fiscal impact on the Office of Procurement and Contracts operations." Conference Comm. Rep. Br. H.B. 2409, Kan. 2017 Sess., 3. "Delayed implementation of a measure that does not appear to address any immediate problem will generally not cause material harm, even if the measure were eventually found to be constitutional and enforceable." *Awad*, 670 F.3d at 1132. Moreover, as Plaintiff argued in her opening memorandum, foreign governments and companies do not enjoy a heckler's veto over the First Amendment rights of U.S. persons. Pl.'s Opening Br. at 19 (citing *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017); *Boos v. Barry*, 485 U.S. 312, 322 (1988)).

The public interest also supports a preliminary injunction in this case. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132; *see also, e.g.*, *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public interest."). That is especially true where, as here, a preliminary injunction would also protect the rights of third parties not before the Court. *See Johnson*, 194 F.3d at 1163 ("[W]e further agree that the preliminary injunction will not be adverse to the public interest as it will protect the free expression of the millions of Internet users both within and outside of the State of New Mexico." (citation and internal quotation marks omitted)); *accord Utah Licensed Beverage Ass'n*, 256 F.3d at 1076; *Elam Constr., Inc. v. Reg'l Transp. Dist.*, 129 F.3d 1343, 1347–48 (10th Cir. 1997).

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction prohibiting Defendant from enforcing HB 2409's certification requirement should be granted. Alternatively, the Court should enter a preliminary injunction prohibiting Defendant from enforcing the certification requirement against Plaintiff.

Respectfully submitted,

/s/ *Stephen Douglas Bonney*
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, KS 66202
Telephone: (913) 490-4102
dbonney@aclukansas.org

Brian Hauss (*pro hac vice*)
Vera Eidelman (*pro hac vice*)
Ben Wizner (*pro hac vice*)
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 27, 2017, the foregoing Plaintiff's Reply in Support of Her Motion for Preliminary Injunction and attached exhibit was served on counsel for Defendant Randall Watson by email through the Court's ECF system:
DATED this 27th day of November, 2017.

/s/ *Stephen Douglas Bonney*
Stephen Douglas Bonney