## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ESTHER KOONTZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-4099-DDC-KGS |
| | ) | |
| **RANDALL D. WATSON,** | ) | |
| **Kansas Commissioner of Education,** | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case presents a pure question of law regarding the constitutionality of Kan. Stat. Ann. § 75-3740f (the "Act"). As this Court has recognized, the Act imposes a "plainly unconstitutional choice" on state contractors: In order to contract with the state, they must certify that they are not participating in a boycott of Israel. Mem. Order, ECF Doc. 18 ("Order"). The First Amendment squarely protects the right to participate in political boycotts. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982). "The conduct prohibited by the Kansas Law is protected for the same reason as the boycotters' conduct in *Claiborne* was protected. . . . Namely, [boycott] organizers have banded together to express collectively their dissatisfaction with the injustice and violence they perceive, as experienced both by Palestinians and Israeli citizens. [Plaintiff] and others participating in this boycott of Israel seek to amplify their voices to influence change, as did the boycotters in *Claiborne*." Order at 17–18. The Act violates the constitutional rights of contractors in at least three respects, any one of which would suffice for summary judgment.

1

First, the Act impermissibly suppresses contractors' protected speech. *Id.* at 15–22. The Act's legislative history reveals that its restrictions on contractor speech are motivated by the desire to "undermine the message of those participating in a boycott of Israel. This is either viewpoint discrimination against the opinion that Israel mistreats Palestinians or subject matter discrimination on the topic of Israel. Both are impermissible goals under the First Amendment." *Id.* at 18. Even if the State could identify some permissible justification for the Act, it "is still unconstitutional because it is not narrowly tailored to achieve those permissive goals." *Id.* at 19.

Second, the Act unconstitutionally compels state contractors to disavow participation in constitutionally protected political boycotts. As the Supreme Court recognized in the McCarthy era, the government cannot force people to disavow protected political beliefs, associations, or expression as a condition of receiving government benefits. The Act directly violates this principle in order to penalize contractors with disfavored political views. And, by compelling Plaintiff and other state contractors to "disown" their participation in boycotts of Israel, the Act effectively forces them "to accommodate Kansas's message of support for Israel." *Id.* at 21.

Third, the Act violates the Equal Protection Clause by engaging in speaker-based discrimination against potential contractors who participate in boycotts of Israel. The Equal Protection Clause prohibits the government from imposing statutory classifications that infringe on the exercise of fundamental First Amendment interests, including the right to engage in political expression, unless the classification is narrowly tailored to a compelling government interest. The Act violates this principle by penalizing contractors who exercise their right to boycott Israel, and it is not narrowly tailored to any compelling government interests.

Finally, the State's recent attempt to avoid final adjudication of the Act's constitutionality is unavailing. On March 15, 2018, the Kansas Secretary of Administration informed Plaintiff that

she is entitled to a religious exemption from the Act, pursuant to the Kansas Preservation of Religious Freedom Act. Plaintiff has not sought a religious exemption under the Kansas Preservation of Religious Freedom Act, nor has she alleged any burden on her religious exercise. The State's unilateral grant of a religious exemption to Plaintiff, after this Court issued a preliminary injunction restraining enforcement of the certification requirement against Plaintiff and all other KSDE contractors, cannot moot Plaintiff's facial challenge to the Act's constitutionality. As this Court recognized in rejecting a similar maneuver at the preliminary injunction stage: "[D]ismissing the case because defendant gave a waiver to plaintiff still would permit defendant to deny a waiver to others, or revoke a waiver given to plaintiff after the court dismisses her suit. These actions would prevent the court from reviewing the constitutionality of the Kansas Law, which is what the voluntary cessation doctrine aims to prevent." *Id.* at 12.

The Court should therefore grant Plaintiff's motion for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### The Act

1.      In June 2017, Kansas enacted House Bill 2409, now codified at Kan. Stat. Ann. § 75-3740e *et seq.* (the "Act"). The Act went into effect on July 1, 2017. Joint Stipulated Facts, ECF Doc. 21 ¶ 11; *see also* Kan. Stat. Ann. § 75-3740e.

2.      Section 2(a) of the Act states:

> Except as provided in subsection (c), the state shall not enter into a contract with an individual or company to acquire or dispose of services, supplies, information technology or construction, unless such individual or company submits a written certification that such individual or company is not currently engaged in a boycott of Israel.

Kan. Stat. Ann. § 75-3740f(a); *see also* Joint Stipulated Facts ¶ 12.

3.      The Act defines "boycott" to mean

> engaging in a refusal to deal, terminating business activities or performing other actions that are intended to limit commercial relations with persons or entities doing business in Israel or in territories controlled by Israel, if those actions are taken either: (1) In compliance with or adherence to calls for a boycott of Israel other than those boycotts to which 50 U.S.C. § 4607(c) applies; or (2) In a manner that discriminates on the basis of nationality, national origin or religion, and that is not based on a valid business reason[.]

Kan. Stat. Ann. § 75-3740e(a); *see also* Joint Stipulated Facts ¶ 13.[1]

4.      The Act authorizes the Secretary of Administration to "waive application of [Section 2(a)] on any contract with any state agency if the secretary determines that compliance is not practicable." Kan. Stat. Ann. § 3740f(c); *see also* Joint Stipulated Facts ¶ 14.

5.      The Act's fiscal note states that it "would have no fiscal impact on the Office of Procurement and Contracts operations." Joint Stipulated Facts ¶ 15; Ex. A to Joint Stipulated Facts at 3; *see also* Ex. B to Joint Stipulated Facts at 2 ("The fiscal note for HB 2409 is zero.").

6.      Several legislators spoke in support of the Act. Joint Stipulated Facts ¶ 16.

7.      Explaining his support for the legislation, Representative Powell "emphasized the unique relationship between the United States and Israel, and Israel's standing as one of the few democracies in the Middle East." Ex. A to Joint Stipulated Facts at 2.

8.      Representative Sutton stated: "Make no mistake about it, [the Boycott, Divestment, Sanctions movement] is an act of economic warfare against America's closest ally in the Middle East." Ex. B to Joint Stipulated Facts at 1. In answering why

---

[1] 50 U.S.C. § 4607 is part of the Export Administration Act ("EAA"), which prohibits U.S. persons from complying with a foreign country's request to boycott a country friendly to the United States.

Kansas should act now, he testified, "[t]he issue of BDS is being discussed right now in the United Nations. Right now, the federal government is discussing legislation similar to HB 2409, albeit on a grander scale. To date, 17 states have approved versions of anti-BDS legislation. . . . Now is certainly the time for Kansas to get on board." *Id.*

9. A number of private individuals also testified in support of the Act. Joint Stipulated Facts ¶ 16.

10. Proponent Margie Robinow testified: "We are asking you to support legislation that will include Kansas in standing up to this hate based economic initiative. The Boycott, Divest, and Sanction Movement [*sic*] . . . Without a stance against BDS, the hearts and minds are lost for the next generation, along with the economic impact." Ex. C to Joint Stipulated Facts at 1. Ms. Robinow further stated: "Anti BDS legislation has enjoyed great bipartisan support across the United States. This is a great opportunity for Kansas unity and support of our great ally, Israel." *Id.* at 2.

11. Proponent Jacob Pellegrino identified himself as a "pro-Israel activist and leader within the pro-Israel movement on [the University of Kansas] campus" when testifying. Ex. D to Joint Stipulated Facts. He stated, "The university maintains . . . multiple pro-Israel outlets, and a continually developing and campus-wide event that has come to be known as Israel week. The role Israel plays in our everyday lives is significant and intentional." *Id.* "I think that our [] ability to stand as a cohesive collegiate generation . . . and say that we not only support Israel but that we are beneficiaries of the [ ] U.S.-Israeli relationship is more powerful than the words themselves." *Id.* "We as Americans and citizens of the great state of Kansas should continue to support Israel by enacting Anti-BDS legislation." *Id.* Connecting the law to university campuses, Mr.

Pellegrino testified, "We as [] students stand together each and every day and outwardly support Israel on our campuses being met with undeniable support along the way. Our campuses are no place for a BDS movement and neither is our state." *Id.*

12.     Proponent Dr. Denice Ross Haynes testified, "I think the boycott movement . . . keeps alive adversarial ideologies, entitlements and offences." Ex. E to Joint Stipulated Facts.

### The Act's Application to Plaintiff

13.     Plaintiff Esther Koontz is a member of the Mennonite Church USA. Joint Stipulated Facts ¶ 2; Esther Koontz Decl., ECF Doc. 4-1 ¶ 2.

14.     In adherence to the calls for boycott made by members of her congregation and the Mennonite Church USA, Plaintiff is currently participating in a boycott of consumer goods and services offered by Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories. Joint Stipulated Facts ¶ 3; Koontz Decl. ¶ 10.

15.     Plaintiff's participation in this boycott is based on her political, religious, and moral beliefs, including her support for Palestinians' human rights. Plaintiff participates in this boycott to protest the Israeli government's actions, as well as the U.S. government's support for those actions. Joint Stipulated Facts ¶ 4; Koontz Decl. ¶ 11.

16.     Plaintiff works as a curriculum coach at Horace Mann Dual Language Magnet School, a public school in Wichita, Kansas. In this role, Plaintiff supports the school's curriculum and trains teachers on how to implement it. Joint Stipulated Facts ¶ 5; Koontz Decl. ¶ 12.

17.     In the 2016–17 academic year, Kansas State Department of Education ("KSDE") employees responsible for administering the KSDE "Math and Science Partnerships" program

selected Plaintiff to become a "teacher trainer" for math teachers around the state through the program. Melissa Fast was Plaintiff's main KSDE point of contact about the position. Joint Stipulated Facts ¶ 6; Koontz Decl. ¶ 13.

18.     Defendant Dr. Randy Watson is and has been for all pertinent times the Kansas Secretary of Education. Joint Stipulated Facts ¶ 31; Compl. ¶ 7.

19.     KSDE required selected teachers to complete a two-day training course in order to become teacher trainers. Plaintiff successfully completed that course on May 30 and 31, 2017. KSDE reimbursed Plaintiff's travel expenses for attending the training. Joint Stipulated Facts ¶ 8; Koontz Decl. ¶ 16.

20.     Upon completing the training, Plaintiff signed up to participate as a teacher trainer in the Math and Science Partnerships program. Joint Stipulated Facts ¶ 9; Koontz Decl. ¶ 17.

21.     After signing up, Plaintiff began to receive training requests via email from Ms. Fast. The requests listed training sessions in need of teacher trainers, and offered payment at $600/day plus reimbursement for travel. Recipients could sign up for any of these trainings, and Plaintiff indicated she was available for several of them. Joint Stipulated Facts ¶ 10; Koontz Decl. ¶ 18.

22.     Through the program, Plaintiff would have contracted with KSDE to offer daylong trainings to public school math teachers around the state. Joint Stipulated Facts ¶ 7; Koontz Decl. ¶ 14.

23.     KSDE began enforcing the Act in July 2017. Joint Stipulated Facts ¶ 21.

24.     On July 10, 2017, Ms. Fast sent the program participants an email entitled: "ACTION REQUIRED: New certifications required for all service payments made by KSDE." The email stated, in relevant part:

I was just notified by our legal department here at KSDE that there is another
form I need to have all of you complete if you are going to receive payments from
KSDE. A recent addition to state law (H.B. 2409) requires all state agencies to
obtain a written certification from any individual or company with which we wish
to enter into financial agreements. The individual or company must certify to
KSDE that they are not currently engaged in a boycott of Israel.

Please complete the attached certification and return it to me as soon as you can. .
. . If we do not have a signed copy on file for you we will not be able to process
any future payments from KSDE.

Joint Stipulated Facts ¶ 22; Ex. F to Joint Stipulated Facts; Koontz Decl. ¶ 19.

25.     The form attached to Ms. Fast's email was entitled "Certification Individual or

Company Not Currently Engaged in a Boycott of Israel." Ex. G to Joint Stipulated Facts. The

Certification stated, "In accordance with HB 2409, 2017 Legislative Session, the State of Kansas

shall not enter into a contract with any Individual or Company . . . unless such Individual or

Company submits a written certification that such Individual or Company is not currently

engaged in a boycott of Israel." *Id.* The Certification did not define what constitutes a "boycott of

Israel." *See id.*

26.     To complete the Certification, Plaintiff would have had to sign below the

following statement: "As an Individual or Contractor entering into a contract with the State of

Kansas, it is hereby certified that the Individual or Company listed below is not currently

engaged in a boycott of Israel." Joint Stipulated Facts ¶ 24; Ex. G to Joint Stipulated Facts;

Koontz Decl. ¶ 20.

27.     On August 9, 2017, Plaintiff sent Ms. Fast an email stating, "As a matter of

conscience I am not able to sign this Boycott of Israel waiver. Will I still be able to train for

KSDE this year and get paid?" Ms. Fast replied: "Unfortunately, the state will not allow me to

pay you if it is not signed. I am sorry." Joint Stipulated Facts ¶ 25; Ex. H to Joint Stipulated

Facts; Koontz Decl. ¶ 23.

28.     Plaintiff objects to the certification. Joint Stipulated Facts ¶ 26; Koontz Decl. ¶ 22.

29.     If called to testify, Plaintiff would testify that, in order to sign the certification, she would have to discontinue her boycott of consumer goods and services offered by Israeli companies and international companies operating in Israeli settlements in the occupied Palestinian territories. Joint Stipulated Facts ¶ 27; Koontz Decl. ¶ 22.

30.     If called to testify, Plaintiff would testify that her boycott does not affect her performance of her job duties in KSDE's teacher training program and that she would train all teachers, regardless of nationality. Joint Stipulated Facts ¶ 28.

31.     Plaintiff is otherwise eligible to participate in KSDE's teacher training program. Joint Stipulated Facts ¶ 29; Koontz Decl. ¶ 25.

32.     Plaintiff continues to be interested in receiving training assignments. Joint Stipulated Facts ¶ 30; Koontz Decl. ¶ 25; Koontz Supplemental Decl., ECF Doc. 12-1 ¶ 3.

33.     Sarah Shipman is and has been for all pertinent times the Kansas Secretary of Administration. Joint Stipulated Facts ¶ 31.

34.     On March 15, 2018, Secretary Shipman sent Plaintiff a letter stating that "the Kansas Preservation of Religious Freedom Act exempts you from the certification requirement of K.S.A. 2017 Supp. 75-3740f," and, as a result, "you may contract with the State, despite your boycott of Israel, without signing that certification." Joint Stipulated Facts ¶ 34; Ex. I to Joint Stipulated Facts.

35.     Given this determination, Defendants, if called to testify, would testify that the State will not attempt to impose Kan. Stat. Ann. 2017 Supp. 75-3740f against Plaintiff. Joint Stipulated Facts ¶ 34.

## PROCEDURAL HISTORY

Plaintiff brought suit on October 11, 2017. On the same day, Plaintiff moved for a preliminary injunction barring Defendant from enforcing the certification with respect to KSDE contractors. On January 31, 2018, after full briefing and a hearing on the preliminary injunction motion, this Court issued a detailed 28-page decision granting the preliminary injunction and holding that the Act's certification requirement violates the First Amendment.[2] The Court held *inter alia*:

- Plaintiff's "First Amendment challenge to the Kansas Law is ripe for judicial review under the relaxed ripeness test applied to facial challenges under the First Amendment." Order at 11.

- Plaintiff's challenge is not moot, notwithstanding the Secretary of Administration's assertion that she would have granted plaintiff a waiver of the certification requirement. *Id.* at 12. The Court observed that "dismissing the case because defendant gave a waiver to plaintiff still would permit defendant to deny a waiver to others, or revoke a waiver given to plaintiff after the court dismisses her suit." *Id.*

- "The conduct prohibited by the Kansas Law is protected for the same reason as the boycotters' conduct in *Claiborne* was protected." *Id.* at 17. Thus, Plaintiff met her burden of demonstrating that "she and others are engaged in protected activity," and that the Act restricts this activity. *Id.* at 18.

- Defendant failed to meet his burden of demonstrating "a strong, legitimate interest in enforcing the Kansas Law." *Id.* at 18. In particular, the Court noted that the Act's "legislative history reveals that its goal is to undermine the message of those participating in a boycott of

---

[2] The Court amended its order on February 16, 2018. ECF Doc. 18. This memorandum references the amended order.

Israel," *id.* and "to minimize any discomfort that Israeli businesses may feel from the boycotts," *id.* at 19. The Court concluded that these are all impermissible goals. *Id.*

- "[E]ven if one assumed that Kansas had passed the law to achieve constitutionally permissible goals," the Act "is not narrowly tailored to achieve those permissive goals." *Id.*

As a result, the Court enjoined Defendant from enforcing the Act "and any other Kansas statute, law, policy, or practice that requires independent contractors to declare that they are not participating in a boycott of Israel." *Id.* at 27.

The parties agreed that discovery is not necessary in this case, and that the case should proceed on cross-motions for summary judgment. ECF Doc. 17. On March 24, the parties filed their joint stipulation of facts. ECF Doc. 21. Plaintiff now brings this motion for summary judgment.

## ARGUMENT

Summary judgment "is an important procedure designed to secure the just, speedy and inexpensive determination of every action." *Freeman v. Benson*, No. 16-3127-DDC-TJJ, 2017 WL 5731295, at *6 (D. Kan. Nov. 28, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted)). It "should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1168 (10th Cir. 2010) (internal quotation marks omitted). When considering a motion for summary judgment, the Court views the facts in the record, and all the reasonable inferences that can be drawn from the record, in the light most favorable to the non-moving party. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). But,

to survive a motion for summary judgment, the non-moving party must do more than merely assert factual disputes. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988). Rather, the non-moving party must set forth specific facts showing that there is a genuine issue for trial and provide probative evidence supporting the allegations. *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 248–49 (1986).

In this case, the uncontroverted facts support Plaintiff's motion for summary judgment. First, as this Court recognized in its Order, the Act violates the First Amendment because it impermissibly restricts state contractors from participating in political boycotts of Israel. Second, the Act imposes an ideological litmus test designed to penalize state contractors on the basis of their protected political beliefs and associations. Finally, the Act violates the Equal Protection Clause by burdening speakers who exercise their fundamental First Amendment rights. While each of these theories offers a basis for issuing summary judgment in Plaintiff's favor, the Court need address "just one of [Plaintiff's legal theories] to decide the current motion." Order at 15.

## I.   The Act Violates the First Amendment Because It Impermissibly Restricts Contractors' Participation in Political Boycotts.

The First Amendment prohibits the state from silencing government contractors who speak out as private citizens on matters of public concern. "[S]tates cannot retaliate or impose conditions on an independent contractor 'on a basis that infringes his constitutionally protected freedom of speech.'" *Id.* at 15 (quoting *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996)). To determine whether the government has violated this constitutional rule, courts apply the doctrinal analysis used to assess government employee speech claims. *Id.* at 15–16; *see generally Pickering v. Bd. of Ed.*, 391 U.S. 563 (1968).

Under this analysis, Plaintiff must first show "that the First Amendment protects the conduct that she claims led to the state denying a benefit." Order at 16. Plaintiff has met her

burden. *Id.* at 16–18. The Act "requires all state contractors to certify that they are not engaged in a boycott of Israel." *Id.* at 2. As the Court recognized, "[t]he First Amendment protects the right to participate in a boycott." *Id.* at 16 (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982)). This includes Plaintiff's boycott of Israel, which is "protected for the same reason as the boycotters' conduct in *Claiborne* was protected." *Id.* at 17. Specifically, "Ms. Koontz, other members of the Mennonite Church, and others have 'banded together' to express, collectively, their dissatisfaction with Israel and to influence governmental action. . . .  She and others participating in this boycott of Israel seek to amplify their voices to influence change, as did the boycotters in *Claiborne*." *Id.* at 17–18. Thus, "[t]he conduct the Kansas Law aims to regulate is inherently expressive." *Id.* at 21 (citing *Claiborne*, 458 U.S. at 907–08).

The Act does not just suppress direct boycott participation, it also likely chills state contractors who sign the certification from participating in a wide range of related expression and association, including speech about the boycott and related issues, association with other boycott participants, demonstrations in support of the boycott, and petitions to public officials in support of the boycott. *See Claiborne*, 458 U.S. at 907–12 (describing the various forms of expression associated with the NAACP's boycott). By requiring state contractors to certify that they are not engaged in boycotts of Israel, the Act chills state contractors from exercising *all* of those protected First Amendment rights. Indeed, because the Certification fails to explain what constitutes a boycott of Israel, state contractors are even more likely to engage in a wide degree of self-censorship to avoid any hint of impropriety. This "large-scale disincentive to [state contractors'] expression also imposes a significant burden on the public's right to read and hear what the employees would otherwise have written and said." *United States v. Nat'l Treasury Employees Union* ("*NTEU*"), 513 U.S. 454, 470 (1995).

Thus, Plaintiff satisfies her initial burden under the *Pickering/NTEU* analysis, and the burden shifts to Defendant, who must "show that Kansas has a strong, legitimate interest in enforcing the Kansas Law." Order at 18. Because of the Act's widespread effect and potential to chill speech before it happens, Defendant bears a much heavier burden here than in a standard public employee speech case. *NTEU*, 513 U.S. at 468. Defendant must show that "the interests of both potential audiences and a vast group of present and future [contractors] in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Id.* (quoting *Pickering*, 391 U.S. at 571); *see also* Order at 16. This requires that Defendant "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *NTEU*, 513 U.S. at 475 (omission in original) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994)).

Defendant failed to meet this burden before, and still fails to meet it now. First, the Act's fiscal note indicates that the Act has "no fiscal impact on the Office of Procurement and Contracts operations." Ex. A to Joint Stipulated Facts at 3. It is therefore difficult to see how participation in political boycotts of Israel "so menaces the 'actual operation of the government,' as to render the [Act's] significant restriction of [contractor] speech an acceptable response." *Sanjour v. EPA*, 56 F.3d 85, 95 (D.C. Cir. 1995) (en banc) (quoting *NTEU*, 513 U.S. at 468). Although Defendant argued in his opposition to Plaintiff's motion for preliminary injunction that enjoining the Act would cause Israeli companies to refuse to do business in Kansas or with Kansas companies, the Court rightly rejected these arguments. "Defendant adduced no evidence that Israeli companies will refuse to do business in or with the State of Kansas unless its ban against Israeli boycotts is enforced. And defendant has not forwarded any evidence that Kansas

commerce has increased because of, or in anticipation of, the boycott ban." Order at 26. No such evidence has been forthcoming. "If such evidence existed, one would expect the defense to have access to it and have presented it. It didn't." *Id.*

Second, as this Court has already found, the Act's "legislative history reveals that its goal is to undermine the message of those participating in a boycott of Israel." *Id.* at 18. In his testimony supporting the Act, Representative Sutton described BDS as "an act of economic warfare against America's closest ally in the Middle East." Ex. B to Joint Stipulated Facts at 1. Proponent Margie Robinow testified that, "[w]ithout a stance against BDS, the hearts and minds are lost for the next generation." Ex. C to Joint Stipulated Facts at 1. Proponent Jacob Pellegrino testified that "[o]ur campuses are no place for a BDS movement and neither is our state." Ex. D to Joint Stipulated Facts. And Proponent Dr. Denice Ross Haynes testified that "the boycott movement . . . keeps alive adversarial ideologies, entitlements and offences." Ex. E to Joint Stipulated Facts. "This is either viewpoint discrimination against the opinion that Israel mistreats Palestinians or subject matter discrimination on the topic of Israel. Both are impermissible goals under the First Amendment." Order at 18. The "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)); *see also, e.g.*, *RAV v. City of St. Paul*, 505 U.S. 377, 382 (1992).

The Act "also aims to minimize any discomfort that Israeli businesses may feel from the boycotts." Order at 19. For example, Representative Powell "emphasized the unique relationship between the United States and Israel, and Israel's standing as one of the few democracies in the Middle East." Ex. A to Joint Stipulated Facts at 2. This goal is equally impermissible. The government cannot restrict protected speech on the basis of a listener's expected reaction. Order

at 19 (citing *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017); *see also Boos v. Barry*, 485 U.S. 312, 322 (1988) ("As a general matter, we have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment. . . . We are not persuaded that the differences between foreign officials and American citizens require us to deviate from these principles here." (citation and internal quotation marks omitted)).

Finally, "even if one assumed that Kansas had passed the law to achieve constitutionally permissible goals that would not change the outcome here," because the Act "is not narrowly tailored to achieve those permissive goals." Order at 19. "If Kansas had passed its law to regulate boycotts intended to suppress economic competition coming from Israel . . . the Kansas Law is overinclusive . . .  because it also bans political boycotts, which is impermissible." *Id.* (citing *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964); *see also Sanjour*, 56 F.3d at 97–98. If the "goal is to promote trade relations with Israel . . . the Kansas Law is underinclusive because it only regulates boycotts but does not regulate other conduct that affects trade." *Id.* Moreover, "[t]he authority the Kansas Law grants the Secretary of Administration to waive the certification requirement also undermines any rationale offered by defendant." *Id.* "Exemptions from an otherwise legitimate regulation of a medium of speech . . . may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994)).[3]

## II.     The Act Violates the First Amendment Because It Compels State Contractors to Disavow Participation in Political Boycotts.

---

[3] Because the Act is expressly content based and motivated by viewpoint discrimination, strict scrutiny is warranted. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). The Act fails strict scrutiny for the same reason it fails to pass muster under *NTEU*—it is not narrowly tailored to advancing any legitimate government interests, and it is certainly not the least restrictive means for advancing a compelling government interest.

The Act also violates the First Amendment's prohibition against compelled speech. The Constitution prohibits the State from imposing political and ideological litmus tests on government benefits. Public "[e]mployment may not be conditioned on an oath denying past, or abjuring future, associational activities within constitutional protection." *Cole v. Richardson*, 405 U.S. 676, 680 (1972). "Nor may employment be conditioned on an oath that one has not engaged, or will not engage, in protected speech activities." *Id.*; *see also Speiser v. Randall*, 357 U.S. 513, 518–19 (1958) (striking down a California law that required veterans to declare that they were not engaged in subversive advocacy in order to obtain tax benefits). The same rules apply to government contractors. *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 674–75 (1996) (extending public employee free speech protections to government contractors) ("We have held that government workers are constitutionally protected from dismissal for refusing to take an oath regarding their political affiliation."); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 725–26 (1996) ("Government officials may indeed terminate at-will relationships . . . but it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views.").

The Act violates this principle in two ways. First, the certification requirement is designed to penalize state contractors based on their protected political beliefs and associations. Any attempt to penalize a government employee's or contractor's protected political beliefs or associations violates the First Amendment, unless the nature of the job at issue "requires political allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (applying this test to employees); *see also O'Hare*, 518 U.S. at 726 (holding that the same test applies to public employees and government contractors). As described above, the Act's legislative history demonstrates that it is meant to debar from state contracts anyone who participates in Boycott,

Divestment, and Sanctions (BDS) campaigns. And there is no reason to believe that every single state contractor occupies a position requiring such political allegiance. *See Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000) (the government "bears the burden of proving 'whether political association was an appropriate requirement for the effective performance of the public office involved'" (quoting *Jantzen*, 188 F.3d at 1253)).[4]

Second, as this Court recognized, "[f]orcing plaintiff to disown her boycott is akin to forcing plaintiff to accommodate Kansas's message of support for Israel." Order at 21. In this respect, the Act's certification requirement resembles the pledge at issue in *Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 570 U.S. 205 (2013). There, the Supreme Court struck down a statute requiring organizations receiving certain federal funds to adopt a policy expressly opposing sex trafficking. *Id.* at 221. The Court held that "the

condition by its very nature affect[ed] 'protected conduct outside the scope of the federally funded program,'" because it compelled recipients to express a particular belief. *Id.* at 218 (quoting *Rust v. Sullivan*, 500 U.S. 173, 197 (1991)). Observing that "[a] recipient cannot avow the belief dictated by the Policy Requirement when spending Leadership Act funds, and then turn around and assert a contrary belief, or claim neutrality, when participating in activities on its own time and dime," the Court held that the condition went "beyond defining the limits of the federally funded program to defining the recipient." *Id.* The same is true here. By requiring state contractors to disown participation in boycotts of Israel, the Act impermissibly coopts them into the State's campaign to support Israel.

### III.  The Act Violates the Equal Protection Clause

---

[4] Even if some small subset of state contractors do occupy such positions, the Act's application to all state contractors is substantially overbroad. *See Broadrick v. Oklahoma*, 413 U.S. 601 (1973).

The Act also violates the Equal Protection Clause by penalizing certain individuals and companies based on their protected political beliefs, associations, and expression without sufficient justification. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 563–64 (2011) (striking down a law restricting sale and disclosure of pharmacy records because law "on its face burden[ed] disfavored speech by disfavored speakers"); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("[G]overnment regulation may not favor one speaker over another."); *Riddle v. Hickenlooper*, 742 F.3d 922, 927–28 (10th Cir. 2014) (holding that state statute classifying individual contributions to write-in candidates differently from individual contributions to major party candidates violated the Equal Protection Clause).

The Act penalizes only state contractors who are participating in boycotts of Israel, while allowing other individuals and companies to continue receiving government contracts. Thus, the Act impermissible penalizes speakers based on their exercise of fundamental First Amendment rights. "[T]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Mosley*, 408 U.S. at 101; *see also Austin v. Mich. Chamber of Commerce,* 494 U.S. 652, 666 (1990), *overruled in part on other grounds*, *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 347–65 (2010) ("Because the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest."). The Act is "unconstitutional because it is not narrowly tailored to achieve . . . permissive goals." Order at 19.

## IV.   Defendant's Post Hoc Waiver of the Act's Application to Plaintiff Does Not Change the Analysis.

On March 15, 2018, the Secretary of Administration issued a letter informing Plaintiff that "the Kansas Preservation of Religious Freedom Act exempts you from the certification

requirement of K.S.A. 2017 Supp. 75-3740f," and, as a result, "you may contract with the State, despite your boycott of Israel, without signing that certification." Joint Stipulated Facts ¶ 34; Ex. I to Joint Stipulated Facts. The Kansas Preservation of Religious Freedom Act provides: "Government shall not substantially burden a person's civil right to exercise of religion even if the burden results from a rule of general applicability, unless such government demonstrates, by clear and convincing evidence, that application of the burden to the person: (1)  Is in furtherance of a compelling governmental interest; and (2)   is the least restrictive means of furthering that compelling governmental interest." Kan. Stat. Ann. § 60-5303. Plaintiff has not alleged that the Act substantially burdens her religious exercise within the meaning of the Kansas Preservation of Religious Freedom Act, nor has she requested relief under the Act.

Defendant used similar tactics in its opposition to Plaintiff's motion for preliminary injunction, in which it argued that the case was unripe because Secretary Shipman would have granted Plaintiff a waiver under Section 2(c) of the Act. Def.'s Response to Pl.'s Mot. for Preliminary Injunction, ECF Doc. 11 at 10–11. This Court rightly rejected those arguments: "[D]ismissing the case because defendant gave a waiver to plaintiff still would permit defendant to deny a waiver to others, or revoke a waiver given to plaintiff after the court dismisses her suit. These actions would prevent the court from reviewing the constitutionality of the Kansas Law, which is what the voluntary cessation doctrine aims to prevent." Order at 12 (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

So too here. The State "cannot moot [the] case by voluntary ceasing the allegedly wrongful conduct if [it] could engage in the conduct again after [the] court would dismiss a case challenging it." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.(TOC), Inc.*, 528 U.S. 167, 189 (2000)). "Here, defendant never asserts that he permanently will abandon

enforcement of the Kansas Law's certification requirement." *Id.* at 13. Nor could he, given that he is statutorily obligated to enforce the Act. Indeed, the State's grant of religious exemption at this point is redundant, since this Court's Order already enjoined Defendant from enforcing the Act's certification requirement against Plaintiff and other KSDE contractors. The State cannot prevent this Court from adjudicating a facial First Amendment challenge to a law that remains on the books by finding an alternative rationale for doing what this Court's preliminary injunction order already required it to do.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment.

Respectfully submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, KS 66202
Telephone: (913) 490-4102
dbonney@aclukansas.org

Brian Hauss (*pro hac vice*)
Vera Eidelman (*pro hac vice*)
Ben Wizner (*pro hac vice*)
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 30, 2018, the foregoing Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment was served on counsel for Defendant Randall Watson by email through the Court's ECF system.

DATED this 30th day of March, 2018.

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney
